Filing Copy

Owen D. Kurtin, Esq.
NYS Attorney No. 2047280
KURTIN PLLC
c/o 205 E. 76th Street, Floor 6
New York, NY 10021
(212) 554-3373
okurtin@kurtinlaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

Zhu Jun, aka Jun (Jane) Le Gall,
    Plaintiff

v.

Bank of America, N.A., Bank Santander, N.A., , Daniel      Case No.
Smith, Dave Grayson, Fred Hurd or Estate of Fred Hurd,
    Defendants      Jury Trial Requested

-------------------------------------------------------------------x

**COMPLAINT FOR A CIVIL CASE ALLEGING BREACH OF CONTRACT, CONVERSION, COMMON LAW FRAUD, BANK FRAUD, MAIL FRAUD, WIRE FRAUD, AND INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(28 U.S.C. §1332; DIVERSITY OF CITIZENSHIP)**

1

Filing Copy

### I. The Parties

### A. The Plaintiff

1. Plaintiff, Zhu Jun, aka Jun (Jane) Le Gall ("Le Gall") is a native of China and naturalized French citizen, residing at 33, rue du Château, 92600 Asnières-sur-Seine, France.

### B. The Defendants

2. Upon information and belief, defendant Bank of America, N.A. ("BoA") is a U.S. national bank association with a place of business at One Bryant Park, 115 W. 42nd Street, New York, NY 10036.

3. Upon information and belief, defendant Bank Santander, N.A. ("Santander") is a U.S. national bank association affiliated with Banquo Santander of Spain with a place of business at 45 E. 53rd Street, New York, NY 10022.

4. Upon information and belief, defendant Daniel Smith is a citizen of the State of Massachusetts, residing in Boston, Massachusetts and employed in Santander's Boston office.

5. Upon information and belief, defendant Frederick E. Hurd/Estate of Frederick E. Hurd, is or was a citizen of the State of New Hampshire and an employee of BoA. Upon information and belief, Hurd may be deceased.

6. Upon information and belief, defendant David, aka Dave, Grayson is a citizen of the State of New York, residing at 2307 207th Street, Flushing, NY 11360, according to his New York State Driver's License no. 952 523 725, U.S. Passport no. 114457681 (Issue Date December 17, 2016, Expiration Date December 16, 2026).

Filing Copy

## II. Basis for Jurisdiction and Venue.

7. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1332 because plaintiff is a citizen of France and defendants are citizens of the United States and because the amount in controversy exceeds $75,000.00.

8. Venue is proper in this Court because the defendants are citizens of, reside in, or maintain places of business in the Southern District of New York and because the principal commercial agreements giving rise to this controversy were negotiated and entered into in this District.

## III.  Statement of Claim

9.  In or about the spring of 2019, Le Gall was contacted by defendant Frederick E. Hurd ("Hurd"), whose acquaintance she had made the year before, for the purpose of obtaining for her an $80,000,000.00 unsecured loan from Santander, which Hurd told Le Gall he was an employee of, working in Santander's private bank division.  Plaintiff and defendants Santander, BoA and the individual defendants discussed the business loan throughout the succeeding months.

10.  Plaintiff and Defendants' discussions culminated with the execution of two principal loan documents:

> (1) A document on Bank of America letterhead styled "Bank of America, N.A. Closing Loan Agreement," dated as of April 27, 2020 ("Closing Loan Agreement"), by which the parties agreed that Santander, as lender, would make a loan of $80,000,000.00 to Le Gall to be used for working capital and other corporate purposes; that Hurd, as Guarantor would execute and deliver to Santander an Account Pledge Agreement; BoA would execute and deliver to Santander a Certificate of Deposit Pledge

3

Filing Copy

    Agreement; and Letter of Credit Sponsors would deliver Letters of Credit to Santander in the minimum aggregate amount of $300,000.00.

(2) A document on Bank of America letterhead styled "Loan Agreement Contract," dated as of October 14, 2020, by which the parties agreed that Santander Bank would lend $80,060,000.00, or Eighty Million Sixty Thousand Dollars, to Le Gall, at a 4.00% interest rate and a term of 35 years, with payments of $345,485.46 per month. The Loan Agreement Contract further provided that Le Gall was to pay various closing costs of up to $900,000.00 to be used for "loan Foreign Transaction (Fx Fee), and that following payment of the closing costs, Le Gall would receive the loan funds within "3-7 working days." The Loan Agreement Contract further provided by its terms that it was to be governed by and construed in accordance with the laws of the United States of America" (without any exceptions for conflicts of law), and that in the event of any legal action or proceedings arising out of or in connection with the Loan Agreement Contract, the parties irrevocably submitted to the exclusive jurisdiction of the courts of the United States of America.

11. During the negotiation of the Closing Loan Agreement and the Loan Agreement Contract, and following their execution, Le Gall and defendants engaged in multiple meetings, telephone calls and written electronic communications. In all these communications, defendants represented themselves as acting on behalf of, or in association with, Santander and BoA, and gave Le Gall multiple indications of their bona fides. Upon information and belief, Santander and BoA were aware of and/or permitted the other defendants to represent themselves as officers and employees of the two banks.

Filing Copy

12. From approximately April 2019 to November 2021, during the negotiations for the Closing Loan Agreement and Loan Agreement Contract and after their execution, Le Gall was repeatedly asked by a person representing himself as a Santander Managing Director who called himself Scott Powell, and who used the email address customerservice@santanderusbank.com, to make more than $600,000.00 in payments as the closing costs, or upfront costs, of the loan as foreign exchange, or FX fees.  Le Gall made the requested payments as requested.

13.  At the end of 2020, following questions posed by Le Gall, Le Gall was told by Hurd that "Scott Powell" was actually an ex-Vice Chairman of Santander named Alfredo Sáenz Abad, in charge of the Santander loan program, assisted by defendant Daniel Smith, a Santander loan officer based in Santander's Boston office.

14. Le Gall subsequently heard that Hurd had died in the spring of 2021.  Abad later informed Le Gall that although the guarantor, Hurd, had died, that Santander would fulfill the loan to the extent of disbursing $20,000,000.00 in loan proceeds to Le Gall.

15.  During the period from the summer of 2021 to November 2021, defendant Smith, the Santander loan officer, told Le Gall that after a payment of $30,000.00, she would receive the $20,000,000.00 in loan proceeds.  Le Gall made the payment of $30,000.00 as Smith directed.  Smith then told Le Gall that Abad had "taken" the $20,000,000.00 in loan proceeds, and that Le Gall had to contact him to receive them.  Le Gall told Smith that she had signed no contract with Abad.  Smith did not respond, and Abad did not respond to Le Gall's communications either.

16.  In the autumn of 2021, defendant Grayson contacted Le Gall, stating that he had been a friend of Hurd's and was the executor or trustee of Hurd's estate.

Filing Copy

17. In January and February 2022, Grayson asked Le Gall to make additional payments totaling $6,000.00 to Abad to obtain release of the $20,000,000.00 in loan proceeds, upon which Hurd's company, Ceenaj Logistics, would transfer the $20,000,000.00 to Le Gall's Singapore account. Le Gall went through a process of verifying her identity as Grayson requested through Singapore and French notarial affidavits, a process that culminated on or about February 24, 2022.

18. In or about January 2022, Grayson signed a guarantee document with Le Gall, purporting to guarantee disbursement of the loan proceeds to Le Gall without condition, and on pain of criminal penalties.

19. Eventually, Le Gall paid sums totaling over $600,000.00 in purported upfront and closing costs to obtain the loan proceeds to defendants at defendants' requests and demands.

20. The loan proceeds were never disbursed.

21. By early 2022, Le Gall realized that something was wrong, and engaged the undersigned U.S. counsel to represent her initially in a review of the history of these transactions, then an attempt to achieve a non-litigated resolution and have the loan proceeds disbursed or at least the monies she paid returned, and finally in commencing the current civil action.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

22. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 21 as if set forth herein in their entirety.

23. The Closing Loan Agreement and the Loan Contract Agreement constituted one or more contracts between Le Gall and defendants, joint and severally. Additionally, to the extent parole evidence would be necessary to prove the existence of these or other contracts between Le Gall

and defendants, joint and severally, it exists in the form of multiple written and electronic communications among them.

24. In entering into the Closing Loan Agreement and the Loan Contract Agreement with Le Gall, requesting and taking her payments and not disbursing the loan proceeds set forth in the Closing Loan Agreement and the Loan Contract Agreement, defendants breached their contract or contracts with Le Gall, causing her damages in the amounts of $20,000,000.00 to $80,000,000.00, and alternatively in the approximately $600,000.00 in fees paid by her to defendants to secure the loan proceeds.

25. By reason of defendants' breach of contract, Le Gall has been damaged in an amount to be proved at trial, but at a minimum of $20,000,000.00 and up to $80,000,000.00 plus interest.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Conversion)**

26. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 21 and 23 to 25 as if set forth herein in their entirety.

27. In requesting Le Gall's payment of approximately $600,000.00 in upfront and/or closing fees, and not providing the loan for which those fees were paid, and then refusing to disburse the loan proceeds or return Le Gall's fees, defendants converted Le Gall's loan payments.

28. By reason of defendants' conversion, Le Gall has been damaged in an amount to be proved at trial, but at a minimum of $600,000.00 plus interest.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Common Law Fraud)**

29. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 21, 23 to 25 and 27 to 28 as if set forth herein in their entirety.

Filing Copy

30. Upon information and belief, defendants, individually and in concert, caused plaintiff to enter into the Closing Loan Agreement and the Loan Agreement Contract and to pay them over $600,000.00 in loan origination/closing fees by misrepresenting or omitting to mention material facts, including their identities, individually and in reference to BoA and Santander; their relationships to each other, their bona fides, their ability to procure and originate the loan and other material facts.

31. Le Gall relied on defendants' misrepresentations and omissions to state material facts to her detriment in paying defendants over $600,000.00 in loan origination/closing fees, in not pursuing other lending opportunities and in other ways.

32. By reason of defendants' fraud, Le Gall has been damaged in an amount to be proved at trial, but not less than $600,000.00 plus interest.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Bank Fraud, 18 U.S.C. §1344)

33. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 21, 23 to 25, 27 to 28 and 30 to 32 as if set forth herein in their entirety.

34. To the extent it may be proved that the individual defendants' use of the identity, reputation and prestige of two major banks, BoA and Santander, including by representing themselves as the two banks' lending officers, private bank officers and other functionaries, using the two banks' letterhead and other instrumentalities of the banks' identities, was without the active participation or negligence of the two banks, that use by defendants played a key function in enabling their fraud on Le Gall, who became an indirect victim of the bank fraud committed on BoA and Santander in violation of 18 U.S.C. §1341.

Filing Copy

35. By reason of defendants' fraud against BoA and Santander, Le Gall has been damaged in an amount to be proved at trial, but not less than $600,000.00 plus interest.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Mail Fraud, 18 U.S.C. §1341)

36. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 21, 23 to 25, 27 to 28, 30 to 32, and 34 to 35 as if set forth herein in their entirety.

37. In intending to and committing a scheme to defraud Le Gall, defendants committed multiple act of mailing, using the instrumentalities of the U.S. Postal Service in interstate commerce.

38. By reason of defendants' use of the instrumentalities of the U.S. Postal Service in interstate commerce, defendants are guilty of multiple acts of mail fraud in violation of 18 U.S.C. §1341.

39. By reason of defendants' acts of mail fraud, Le Gall has been damaged in an amount to be proved at trial, but at a minimum of $600,000.00 plus interest.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Wire Fraud, 18 U.S.C. §1343)

40. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 21, 23 to 25, 27 to 28, 30 to 32, 34 to 35 and 37 to 39 and as if set forth herein in their entirety.

41. In intending to and committing a scheme to defraud Le Gall, defendants committed multiple act of emailing, telephone calls and Internet communications using software apps like WhatsApp using the instrumentalities of telecommunications and Internet Service Providers in interstate commerce.

42. By reason of defendants' use of the instrumentalities of telecommunications and Internet Service Providers in interstate commerce, defendants are guilty of multiple acts of wire fraud in violation of 18 U.S.C. §1343.

Filing Copy

43. By reason of defendants' acts of wire fraud, Le Gall has been damaged in an amount to be proved at trial, but at a minimum of $600,000.00 plus interest.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (Intentional and/or Negligent Infliction of Emotional Distress)

44. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 21, 23 to 25, 27 to 28, 30 to 32, 34 to 35, 37 to 39 and 41 to 43 as if set forth herein in their entirety.

47. In perpetuating their scheme to defraud Le Gall, and relentlessly pressuring her for additional funding of so-called upfront and closing costs, defendants wantonly, intentionally, recklessly and negligently caused Le Gall to suffer extreme emotional distress.

48. By reason of defendants' wanton, intentional, reckless and negligent infliction of emotional distress on Le Gall, Le Gall has been damaged in an amount to be proved at trial, but at a minimum of $6,000,000.00 plus interest.

WHEREFORE, plaintiff, ZHU Jun, aka Jun (Jane) LE GALL, demands judgment of defendants:

On the first cause of action, in an amount to be proved at trial, but not less than $20,000,000.00 and up to $80,000,000.00 plus interest;

On the second cause of action, in an amount to be proved at trial, but not less than $600,000.00 plus interest;

On the third cause of action, in an amount to be proved at trial, but not less than $600,000.00 plus interest;

Filing Copy

On the fourth cause of action, in an amount to be proved at trial, but not less than $600,000.00 plus interest;

On the fifth cause of action, in an amount to be proved at trial, but not less than $600,000.00 plus interest;

On the sixth cause of action, in an amount to be proved at trial, but not less than $600,000.00 plus interest;

On the seventh cause of action, in an amount to be proved at trial, but not less than $6,000,000.00 plus interest; and

On all causes of action, exemplary, consequential and punitive damages to the extent authorized by statute, just and proper.

Dated, New York, New York
     December 9, 2022

                      KURTIN PLLC

                      By: _____
                      Owen D. Kurtin
                      c/o 205 E. 76th St., Floor 6
                      New York, New York 10021
                      Telephone (212) 554-3373
                      Email: okurtin@kurtinlaw.com
                      *Attorneys for Plaintiff*