UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                   :
ZHU JUN a/k/a JUN "JANE" LE GALL,         :
                                                   :
                   Plaintiff,              :
                                                   :                22-CV-10466 (JMF)
              -v-                            :
                                                   :            MEMORANDUM OPINION
BANK OF AMERICA, N.A. et al.,             :               AND ORDER
                                                   :
                   Defendants.         :
                                                   :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Zhu Jun, also known as Jun or Jane Le Gall ("Le Gall"), brings claims against

two banks, Bank of America, N.A. ("BofA"), and Bank Santander, N.A. ("Santander" and

together with BofA, the "Bank Defendants"), and three individuals, Dave Grayson, Fred Hurd,

and Daniel Smith (together, the "Individual Defendants"), in connection with a multi-year

advance-fee scheme.  In brief, Le Gall alleges that Hurd, who claimed to be an employee of

Santander, contacted her in 2019 for the "purpose of obtaining for her" an $80 million unsecured

loan.  ECF No. 46 ("FAC"), ¶ 9.  Le Gall, the Bank Defendants, and the Individual Defendants

"discussed the Loan throughout the succeeding months," *id.*, eventually signing two loan

agreements, on BofA letterhead, pursuant to which Le Gall agreed to pay "various closing costs

of up to $900,000" in exchange for a loan from Santander of $80 million, *id.* ¶ 10.

       The loan proceeds never materialized, but Le Gall was lured by one or more of the

Individual Defendants into paying approximately $630,000 in purported "closing costs."  *Id.*

¶¶ 11-20.  More specifically, from approximately April 2019 to November 2021, Le Gall was in

communication with "a person representing himself as a Santander Managing Director who

called himself Scott Powell," who asked her to "make more than $600,000 in payments" as

closing costs for the loan — payments Le Gall did make.  *Id.* ¶ 12.  At the end of 2020, Hurd told

Le Gall "that 'Scott Powell' was actually an ex-Vice Chairman of Santander named Alfredo

Sáenz Abad," who was assisted by Smith, whose LinkedIn profile indicated he was a Santander

loan officer based in Boston.  *Id.* ¶ 13.  A few months later, Le Gall heard that Hurd had died, but

Smith "repeatedly" told her that she could still receive $20 million in loan proceeds if she made

an additional payment of $30,000, which she also did make.  *Id.* ¶¶ 14-15.  Smith then told Le

Gall that Abad had "taken" the $20 million and that Le Gall had to contact Abad to receive the

money.  *Id.* ¶ 15.  When Le Gall told Smith she had signed no contract with Abad, Smith did not

respond; nor did Abad.  *Id.*  Meanwhile, in the autumn of 2021, Grayson contacted Le Gall,

claiming to be the executor of Hurd's estate.  *Id.* ¶ 16.  A few months later, Grayson asked Le

Gall to pay an additional $6,000 to Abad to obtain release of the $20 million, after which "a

company with which Hurd had been affiliated, Ceenaj Logistics, would transfer the

$20,000,000.00 to Le Gall's Singapore account."  *Id.* ¶ 17.  Le Gall does not allege whether she

paid the additional $6,000, but, as noted, she never received any loan proceeds.  *Id.* ¶ 20.

Notably, all communications along the way took place virtually, by video call, telephone call, or

written electronic communication.  *Id.* ¶ 11.

      In December 2022, Le Gall filed this lawsuit, which includes claims for breach of

contract, conversion, common law fraud, and intentional and negligent infliction of emotional

distress.  Only the Bank Defendants have appeared, and they now move, pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Le Gall's claims.  *See* ECF No. 53.

**A.  Claims Against the Individual Defendants**

      Before turning to the Bank Defendants' motion, the Court addresses the claims against

the Individual Defendants.  Rule 4(m) of the Federal Rules of Civil Procedure generally provides

that service on a defendant must be made "within 90 days after the complaint is filed."  Fed. R.

Civ. P. 4(m).  As of March 13, 2023, ninety days after the filing of the Complaint, Le Gall had

filed an affidavit of service as to Smith, but not Hurd or Grayson.  *See* ECF No. 17.  As to Smith,

the affiant stated only that he had left a copy of the summons and Complaint with a person at

Santander in Boston — even though that person had stated "that he was not sure if Daniel Smith

work[ed] [t]here or not."  *Id.*  On March 15, 2023, the Court entered an Order requiring Le Gall

to show cause why the claims against Hurd and Grayson should not be dismissed for failure to

serve within the ninety-day period.  *See* ECF No. 34.  In the Order, the Court also expressed

"doubts about whether service" on Smith had been proper and directed her to show cause why

service was proper under Rule 4 "and/or applicable state law."  *Id.*

On March 28, 2023, Le Gall's counsel filed a letter in response to the Court's Order.  *See*

ECF No. 35.  As relevant here, counsel explained that the Individual Defendants had been

"difficult to serve."  *Id.* at 1.  First, Counsel reported that Grayson had "not been at his last

known address, in Flushing, Queens, in months" and that "he may have fled to Vancouver,

Canada."  *Id.*  Counsel noted that he was "trying to find an address" for Grayson in Canada and

that Rule 4(m)'s ninety-day limit "does not apply to defendants who are outside the country."  *Id.*

But, counsel noted, Grayson had been "served . . . by substituted service pursuant to Fed. R. Civ.

P. Rule 4(e) and Article 3 of the New York Civil Practice Law and Rules."  *Id.* at 1-2.  Second,

counsel reported that Smith had "changed his place of employment to KeyBank in Boston" and

that Le Gall had "served him there pursuant to Rule 4(e) and Article 3 of the New York Civil

Practice Law and Rules, notwithstanding his refusal to accept process either personally or

through another KeyBank employee."  *Id.* at 2.  Counsel acknowledged that Hurd had not yet

been served.  *See id.*  Counsel noted that he believed Hurd was "deceased" and that he was

"searching for a representative for his estate, probably in New Hampshire."  *Id.*

The Court endorsed counsel's letter the following day.  *See* ECF No. 36.  As relevant

here, the endorsement stated as follows:

> For any Defendant that Plaintiff believes was properly served, Plaintiff should file
> an affidavit of service on the docket that, in addition to proof of service, sets out
> how such service comports with Rule 4 of the Federal Rules of Civil Procedure
> and/or any applicable state law.  The Court also notes that service on individuals
> outside of the United States must be made pursuant to Rule 4(f) and not Rule 4(e).
> Plaintiff is granted until April 26, 2023, to effectuate service on all Individual
> Defendants and to file all affidavits of service.

*Id.* at 2.  On April 23, 2023, Le Gall filed affidavits of service with respect to Smith and

Grayson.  *See* ECF Nos. 48-49.  As to Smith, the affidavit reported that service had been

executed by affixing a copy of the summons and Complaint to the door of a KeyBank office in

Boston, his purported place of work.  ECF No. 48.  As to Grayson, the affidavit reported that

service had been executed by affixing a copy of the summons and Complaint to the front door of

his last known residence and sending a copy by first class mail to the same address.  ECF No. 49.

To date, Le Gall has filed no proof of service on Hurd or his estate.

In light of the foregoing record, the Court concludes that Le Gall's claims as to all three

Individual Defendants must be dismissed for failure to serve.  As to Hurd, little explanation is

required, as Le Gall failed to file any proof of service by the April 26, 2023 extended deadline.

As to Smith and Grayson, the purported methods of service were demonstrably improper (and Le

Gall did not even try to comply with the Court's March 29, 2023 Order to "set[] out how" the

methods of "service comport[ed] with Rule 4 of the Federal Rules of Civil Procedure and/or any

applicable state law").  In Smith's case, service was improper because neither Massachusetts nor

New York allows service by affixing a copy of the summons and Complaint to the door of an

individual's purported place of business without *also* mailing a copy to the individual's last

known residence or actual place of business.  *See* Mass. R. Civ. P. 4(d)(1); N.Y. C.P.L.R. 308(2); *see also* Fed. R. Civ. P. 4(e)(1) (providing that "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made").  And in Grayson's case, service was improper because there is no evidence that the address was his "'*actual*' . . . dwelling place[] or usual abode." *Vargas v. Dipilato*, No. 21-CV-3884 (ER), 2023 WL 6122937, at *3 (S.D.N.Y. Sept. 18, 2023) (emphasis added) (citing *Feinstein v. Bergner*, 397 N.E.2d 1161, 1164 (N.Y. 1979)).  To the contrary, the affidavit of service itself explicitly reports that someone at the residence stated that "there was no Dave Grayson at this address." ECF No. 49.[1]  Accordingly, Le Gall's claims against the Individual Defendants must be and are dismissed for failure to serve.

**B.  Claims Against the Bank Defendants**

That leaves only the claims against the Bank Defendants.  In evaluating a Rule 12(b)(6) motion, a court must accept all well-pleaded facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).  A plaintiff's claims will survive a motion to dismiss, however, only if it alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1]      Counsel's suggestion in his letter of March 28, 2023, that Grayson "may have fled to Vancouver, Canada" is immaterial.  First, Le Gall submits no evidence that Grayson is outside the United States.  Second and in any event, the Court's March 29, 2023 endorsement set a firm deadline of April 26, 2023, for service on all three Individual Defendants. *See* ECF No. 36.

(2009) (citing *Twombly*, 550 U.S. at 556).  Thus, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  Significantly, in evaluating whether a plaintiff meets these standards, a district court "need not credit conclusory allegations nor suspend common sense when analyzing the complaint." *AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 534 (2d Cir. 2020) (citations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[D]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (internal quotation marks omitted)); *cf. Dep't of Commerce v. New York*, 139 S. Ct. 2552, 2575 (2019) (noting that, even where a court's review is deferential, it is "not required to exhibit a naiveté from which ordinary citizens are free").

Measured against these standards, Le Gall's claims against the Banks fall short.  To be sure, the allegations in the Amended Complaint, taken as true, establish that Le Gall was the victim of an advance-fee scheme perpetrated by the Individual Defendants (or at least by people using their names).  But the well-pleaded allegations do not plausibly establish that either Bank knew of, let alone was involved in, the scheme.  That is plain enough with respect to BofA, as to which Le Gall makes no specific allegations whatsoever.  Indeed, Le Gall fails to allege, except in conclusory fashion, that the fraudsters even represented themselves as BofA employees, that any meeting was conducted at a BofA location, that any telephone calls or communications came from any BofA employee, that BofA executed either of the loan agreements, that she paid BofA any money, or that BofA itself promised to loan her money.  At most, she alleges that the loan agreements were on BofA letterhead and that she came to believe (apparently sometime after the scheme had been perpetrated) that Hurd — despite having represented himself to be a Santander

6

employee — was actually an employee of BofA.  FAC ¶¶ 5, 9-10.  But these facts alone are plainly insufficient to "nudge[ her] claims across the line from conceivable to plausible" as to BofA.  *Twombly*, 550 U.S. at 570; *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) ("Conclusory allegations of 'participation' . . . have long been held insufficient to state a claim."); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 F. App'x 17, 20 (2d Cir. 2011) (summary order) (finding allegations of knowledge that were "purely conclusory" insufficient to state a claim).

Le Gall's allegations with respect to Santander are little better — and still fall short.  At bottom, she relies only on the representations of the Individual Defendants, people she herself alleges to be fraudsters, to establish Santander's relevance to this case.  Suffice it to say, Le Gall's own allegations provide ample reason to doubt that these representations were accurate. On top of the mere fact that Le Gall alleges that the Individual Defendants perpetrated a massive fraud, she affirmatively alleges that Hurd represented himself to be an employee of Santander when he was an employee of BofA and that the person calling himself "Scott Powell" was actually someone else altogether.  FAC ¶¶ 5, 9, 13.  More broadly, Le Gall's allegations of Santander's knowledge and involvement in the fraud simply "strain credulity."  *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *4 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533.  Le Gall would have the Court believe that she was contacted out of the blue by a Santander employee who offered to lend her, unsecured, $80 million; that the bank required her to provide only letters of credit in the amount of $300,000, less than the required monthly payment on the loan; that the relevant agreements were on BofA letterhead even though the loan proceeds came from Santander; that the bank, after failing to provide the $80 million, demanded additional money from her for $20 million, which for some reason was held by either

Abad or a company with which Hurd had been affiliated named Ceenaj Logistics; and that, throughout all of these events, the bank's dealings with Le Gall were entirely virtual (even though they began in 2019, before the COVID-19 pandemic, and lasted until 2022). FAC ¶¶ 9-11, 12, 17. Put simply, "[a]lthough the Court is required to assume the truth of the allegations in the [Amended Complaint], it is not required to discard its common sense. Nor is the Court required to sustain claims that 'are implausible in light of factual allegations *in the pleading itself.*'" *AJ Energy LLC*, 2019 WL 4688629, at *5 (citation omitted) (quoting *Krys v. Pigott*, 749 F.3d 117, 133 (2d Cir. 2014)). That is the case with respect to Le Gall's claims against Santander (and BofA).

In short, Le Gall's allegations, taken as true, certainly establish that she was the victim of a fraud. But she does not plausibly allege that the Bank Defendants had knowledge of, let alone involvement in, the scheme. *See, e.g., In re Agria Corp. Sec. Litig.*, 672 F. Supp. 2d 520, 527 (S.D.N.Y. 2009) (noting that the motion-to-dismiss standard "screens out the little green men cases" (internal quotation marks omitted)). Accordingly, the claims against the Bank Defendants must be and are also dismissed.

## CONCLUSION

For the foregoing reasons, Le Gall's claims against both the Individual Defendants and the Bank Defendants are dismissed. Additionally, the Court declines to *sua sponte* grant Le Gall leave to amend. To be sure, leave to amend a pleading should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), but it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.2d 184, 200 (2d Cir. 2007). Exercising that discretion, there are several reasons to deny leave here. First, a district court may deny leave to amend where, as here, amendment would be futile because the problems

with a plaintiff's claims are "substantive" and "better pleading will not cure" them. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Second, Le Gall was previously granted leave to amend while being instructed that she would not be given any further opportunity to amend, ECF No. 32, and she did in fact amend.  Finally, Le Gall neither seeks leave to amend again nor suggests that she possesses any additional facts that could cure the defects in her dismissed claims. *See, e.g.*, *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019).

The Clerk of Court is directed to terminate ECF No. 53, to enter judgment consistent with this Memorandum Opinion and Order, and to close this case.

SO ORDERED.

Dated: November 2, 2023
      New York, New York

_____
                                    JESSE M. FURMAN
                                    United States District Judge